**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

| | |
|---|---|
| DOUBLE EAGLE CLUB, INC., <br><br> Plaintiff, <br><br> v. <br><br> BG CAPITAL MANAGEMENT SOUTH FLORIDA, LLC, BG SIGNATURE PROPERTIES, LLC, HELMUT FORERO, and ROBERT D. GENOVESE, <br><br> Defendants. | Civil Action No. <br> 1:17-cv-00073-JRH-BKE |

## FIRST AMENDED COMPLAINT

1.      This is an action brought by Plaintiff Double Eagle Club, Inc. ("Plaintiff" or "Double Eagle") against Defendants BG Capital Management South Florida, LLC, BG Signature Properties LLC (collectively, "BG"), Helmut Forero ("Mr. Forero"), and Robert D. Genovese ("Mr. Genovese") (collectively, "Defendants"), for actual damages, punitive damages, attorneys' fees and expenses for fraud, and breach of contract, and injunctive and other relief to remedy Defendants' multitude of fraudulent transfers.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiff Double Eagle Club, Inc. is a corporation formed and existing under laws of the State of Georgia.  Double Eagle is a citizen and a resident of the State of Georgia, with its principal place of business in Chicago, Illinois.

3.      Defendant BG Capital Management South Florida, LLC ("BG Capital") is a limited liability company organized under the laws of the State of Florida, and is a citizen of that state.  At all times relevant to this Complaint, BG Capital conducted business as BG Signature,

BG Signature Properties, and/or BG Signature Properties LLC.  BG Capital's principal place of business is 1250 S. Pine Island Rd., 5th Floor, Plantation, Florida 33324.  According to the Florida Secretary of State, BG Capital's registered agent for service of process is BG Capital Management South Florida, 1250 South Pine Island Rd., 5th Floor, Plantation, FL 33324. As reflected herein, BG Capital is a mere alter ego of Defendant Mr. Genovese, and as a result all action and inaction attributed to it in this Complaint are likewise directly attributable to Mr. Genovese.

4.      Defendant BG Signature Properties LLC ("BG Signature") is a limited liability company organized under the laws of the State of Florida, and is a citizen of that state.  BG Signature's principal place of business is 1250 S. Pine Island Rd., 5th Floor, Plantation, Florida 33324.  BG Signature is managed and operated by BG Capital Management South Florida LLC. According to the Florida Secretary of State, BG Signature's registered agent for service of process is Helmut Forero at BG Capital Management South Florida LLC, 1250 South Pine Island Rd., 5th Floor, Plantation, FL 33324. As reflected herein, BG Signature is the mere alter ego of Defendant Mr. Genovese, and as a result all action and inaction attributed to it in this Complaint are likewise directly attributable to Mr. Genovese.

5.      Defendant Helmut Forero ("Mr. Forero") is BG's Chief Financial Officer.  On information and belief, Mr. Forero is a citizen of and resides in Miami, Florida.

6.      Defendant Robert D. "Bobby" Genovese ("Mr. Genovese") is the purported Chairman of BG Capital Management South Florida LLC, Chairman of BG Capital Group, Manager of BG Big Yacht LLC, and is a citizen of and resides in the State of Florida.

7.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Double Eagle and Defendants are citizens of different states, and the amount in controversy exceeds $75,000.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, as a substantial part of the events or omissions giving rise to Double Eagle's claims occurred in this District.

9.     Additionally, by consent Defendants BG Capital Management South Florida, LLC, and BG Signature Properties, LLC are subject to the Court's personal jurisdiction with respect to such action. *See* "BG Signature 2016 Membership Agreement," attached hereto as **Exhibit A** (the "Membership Agreement").[1]  As reflected herein, the Defendant Mr. Genovese controlled the Defendant LLCs among many others, and used them by their own admission to hinder, delay and defraud Double Eagle.  Mr. Genovese ignored and abused the corporate forms to commit fraud, and they were merely his alter egos.  As a result, Mr. Genovese, too, stipulated to this jurisdiction among other terms when his alter ego LLCs stipulated to those terms.

10.     The Membership Agreement also provides that "any claim or dispute arising out of or related to this Agreement or the transactions contemplated hereby whether in contract, tort, or otherwise, shall he governed by and construed in accordance with the laws in effect in the State of Georgia in the United States without giving effect to its conflicts of law principles.". *See* Exhibit A, The Membership Agreement at (unnumbered) p. 3.

---

[1] The Membership Agreement at (unnumbered) p. 3 states that "[e]ach party submits to the jurisdiction of the appropriate court, in or closest to, Richmond County, GA, and waives, to the fullest extent permitted by law, any jurisdictional objections as well as the right to trial by jury in any action, suit, claim or proceeding brought to enforce, defend, or interpret any rights or remedies arising hereunder, relating to or in connection with this Agreement."

11.      Further, Defendants BG Capital Management South Florida, LLC, and BG Signature Properties, LLC have waived any objections to the *in personam* jurisdiction of this Court. *See* **Exhibit F**, admitted Request for Admission ("RFA") No. 3 ("You have waived any objections to the in personam jurisdiction of this Court.").[2]

12.      Additionally, Defendant BG Capital Management South Florida, LLC has voluntarily subjected itself to the jurisdiction of this Court through the appearance of its purported Chairman, Robert Genovese, by Affidavit in this action, as has Defendant Robert Genovese personally and voluntarily subjected himself to the Court's jurisdiction through his appearance and testimony. (Doc. 23-3).

13.      Furthermore, each of the Defendants is subject to this Court's personal jurisdiction under O.C.G.A. § 9-10-91(1) because they transacted business in this State by, for example and as explained in more detail below, contracting for the provision of roughly $288,041.66 in goods and services to be provided to Defendants and to Defendants' clients in the State of Georgia, and Mr. Forero and Mr. Genovese were primary participants in the activities forming the basis of jurisdiction over Defendants BG Capital Management South Florida, LLC and BG Signature Properties, LLC.  In addition, Defendants BG Capital Management South Florida, LLC and BG Signature Properties, LLC were mere alter egos of Defendant Mr. Genovese, such that their purported transactions in the State of Georgia were Mr. Genovese's transactions.

14.      In addition, each of the Defendants is subject to personal jurisdiction in this Court under O.C.G.A. § 9-10-91(2), because they committed tortious acts or omissions in Georgia by

---

[2] BG failed to object or otherwise respond to Double Eagle's Requests for Admission to Defendants and thus, all such Requests stand admitted. *See* Doc. 19-1, Exhibit A, Declaration of Kevin A. Maxim, ¶¶ 8-10.

fraudulently inducing Double Eagle to provide to Defendants and to Defendants' clients in the State of Georgia goods and services at the 2016 Masters Tournament.  Defendants also sent staff members to Georgia and housed them in Augusta during the 2016 Masters Tournament in Georgia for purposes of completing their fraudulent scheme.

15.     Moreover, each of the Defendants is subject to the personal jurisdiction of this Court O.C.G.A. § 9-10-91(2), because they committed tortious injury to Double Eagle in Georgia by certain acts and omissions outside the state, and they regularly did or solicited business in Georgia, and engaged in other persistent courses of conduct, and derived substantial revenue from goods and services used or consumed or services rendered in Georgia, when Defendants solicited and contracted with their clients to attend and be housed in luxury accommodations at the 2016 Masters Tournament, and contracted with Double Eagle to provide goods and services to Defendants' clients in Georgia.  As discussed in additional detail below, Defendants derived substantial revenue from their 2016 Masters Tournament scheme – revenue made even more substantial by their fraud and fraudulent transfers committed against Double Eagle.

## **FACTUAL ALLEGATIONS**

16.     Double Eagle provides custom hospitality programs and experiences in and around Augusta, Georgia during the annual Masters Tournament.  Double Eagle also provides memberships to its private club facility adjacent to the August National Golf Course, located at 2603 Washington Road, Augusta, Georgia (the "Club").

17.     In 2015, Mr. Genovese caused and directed his alter egos, the BG Defendants, to secure accommodations and services in Georgia for their clients during the 2016 Masters Tournament.

18.     On or about October 1, 2015, Double Eagle and BG entered into the written agreement, "BG Signature 2016 Membership Agreement," attached hereto as **Exhibit A** (the "Membership Agreement").

19.     On or about November 10, 2015, Mr. Genovese caused and directed his alter egos, the BG Defendants, to secure additional houses, accommodations, and services in Georgia from Double Eagle for the 2016 Masters, as he wanted "a whole cul de sac that will be named BG for the entire [Masters] week". *See* **Exhibit J**, Email from Robert Genovese to Defendant BG Signature's Andy Irvine.

20.     On or about February 1, 2016, BG informed Double Eagle that it sought to modify the Membership Agreement to reduce the number of groups for the "First Wave." *See* Exhibit A.

21.     On or about March 4, 2016, Double Eagle and BG modified the Membership Agreement via the signed written addendum, "Double Eagle Club Addendum #1 – Additional Amenities," attached hereto as **Exhibit B** (the "Addendum") (the Membership Agreement and Addendum collectively, the "Agreement").

22.     Pursuant to the Agreement, BG agreed to pay Double Eagle the "Membership Cost" of Two Hundred Sixty-Five Thousand Dollars ($265,000). *See* Exhibit A at p. 2.

23.     Additionally, pursuant to the Agreement, BG agreed to pay Double Eagle for any additional amenities or services requested by BG, including but not limited to, private catering, additional transportation, or golf tee times, at a mutually agreed upon cost plus an eighteen percent (18%) service charge. *See* Exhibit A at p. 2.

- 6 -

24.     On or about March 4, 2016, Double Eagle and BG modified the Membership Agreement to reflect a reduction for the First Wave and credit of Twenty Thousand Dollars ($20,000) to the remaining amounts due from BG under the Agreement. *See* Exhibit B.

25.     Between April 4, 2016 and April 11, 2016 in Augusta, Georgia, Double Eagle provided and BG received without objection the amenities and services set forth in the Agreement, including but not limited to Masters Tournament Practice Round Tickets, Masters Tournament Badges, Double Eagle Club Membership passes, furnished homes, a concierge, drivers, transportation, and concierge, housekeeping and related services (the "Amenities"). *See* Exhibit A.

26.     Additionally, between January 2016 and April 2016, BG requested and received the additional amenities and services set forth in **Exhibit C** attached hereto ("Additional Amenities") through its agent(s).

27.     On or about December 7, 2015, BG paid Double Eagle the sum of Fifty Thousand Dollars ($50,000) as BG's initial payment under the Agreement.

28.     On information and belief, Mr. Forero initiated and authorized the $50,000 payment identified in Paragraph 27 above from BG Capital's Bank of America bank account no. *0837 to Double Eagle via wire transfer.

29.     On or about January 28, 2016, BG paid Double Eagle the sum of Seventy Thousand Dollars ($70,000) as BG's second installation payment under the Agreement.

30.     On information and belief, Mr. Forero initiated and authorized the $70,000 payment identified in Paragraph 29 above from BG Capital's Bank of America bank account no. *0837 to Double Eagle via wire transfer.

31.     On or about February 15, 2016, Double Eagle invoiced BG for the third payment due under the Agreement.

32.     On or about March 4, 2016, Double Eagle provided BG an amended invoice for the third payment due under the Agreement in the amount of One Hundred Twenty-Five Thousand Dollars ($125,000).  *See* Invoice No. D20417, attached hereto as **Exhibit D**.  A true and correct copy of this invoice is attached hereto as Exhibit D.  BG has failed and refused to pay this invoice.

33.     On or before April 1, 2016, Double Eagle made additional demands upon BG for payment of the past due amount of One Hundred Twenty-Five Thousand Dollars ($125,000) that BG owed under the Agreement.

34.     On or about April 1, 2016 – with the Masters Tournament days from opening – BG along with Mr. Forero falsely represented to Double Eagle that BG and Mr. Forero had caused to be paid One Hundred Twenty-Five Thousand Dollars ($125,000) via a wire transfer from BG's Bank of America Merrill Lynch account to Double Eagle's JP Morgan Chase bank account. *See* Exhibit F, admitted RFA No. 17 ("On or about April 1, 2016, you falsely represented that you had sent a wire transfer to Double Eagle in the amount of $125,000.").

35.     On information and belief, on or about April 1, 2016 Mr. Forero initiated a wire transfer from BG Capital's Bank of America account no. *0837 to Double Eagle in the amount of One Hundred Twenty-Five Thousand dollars ($125,000) with the fraudulent intent to cancel the wire prior to transfer, and he did cancel the wire prior to transfer.

36.     Mr. Forero initiated the wire transfer process described in Paragraph 35 above for the purpose of providing false documentary "proof" of the wire to Double Eagle to induce Double

Eagle to continue providing goods and services to BG. *See* **Exhibit G**, Bank of America Payment Details Report.

37.     BG did not transfer any money to Double Eagle via the alleged April 1, 2016 wire transfer described in Paragraph Nos. 34 and 35 above.

38.     Double Eagle informed BG that it did not receive the alleged wire transfer and demanded payment of the remaining Membership Cost due under the Agreement.

39.     On or about April 4, 2016 – the opening day of the practice round for the Masters Tournament –  BG informed Double Eagle that it had sent a written check (dated April 1, 2016) made payable to Double Eagle for $125,000.

40.     On information and belief, on or about April 4, 2016, BG and Mr. Forero stopped payment on the check identified in Paragraph 39 above. *See* Exhibit F, admitted RFA No. 18 ("On or about April 4, 2016, you sent a check in the amount of $125,000 to Double Eagle, with the intent to later stop payment on that check, which you did."); and **Exhibit H** (Bank of America Stop Payment Notice).

41.     Between April 4, 2016 and April 11, 2016 in Augusta, Georgia, Double Eagle proceeding under the false impression that BG and Mr. Forero had paid as agreed, provided and BG received without objection the benefit of the Amenities and Additional Amenities pursuant to the Agreement.

42.     On or about April 18, 2016, after providing the Amenities and Additional Amenities at the Masters Tournament, Double Eagle deposited the BG check identified in Paragraph 39 above.

43.     On or about April 20, 2016, Double Eagle received notice that the deposited BG check identified in Paragraph 39 above had been returned because BG had initiated a stop payment order on the deposited check.

44.     Mr. Forero executed the $125,000 check identified in Paragraph 39 above made payable to Double Eagle with the knowledge and then-present intent never to fund the check, and to later stop payment on that check such that Double Eagle would be fraudulently induced to provide the contracted services. *See* Exhibit F, admitted RFA No. 19 ("You intended to deceive Double Eagle and induce Double Eagle to act in reliance on your false representation as set forth in Counts II and III of the Complaint."). BG's and Mr. Forero's check, by their own design, would thereby be rendered non-negotiable and worthless. On information and belief, BG and Mr. Forero thereafter directed Bank of America to stop payment on the check.

45.     On or about May 27, 2016, Double Eagle invoiced BG for the Additional Amenities that BG had requested and received under the Agreement, in the amount of Forty-Three Thousand Forty-One Dollars and Sixty-Six Cents ($43,041.66). *See* **Exhibit E**, Invoice No. D20463. A true and correct copy of this invoice is attached hereto as Exhibit E. BG has failed and refused to pay this invoice.

46.     Despite multiple emails, phone calls, and demands for payment, BG has failed and refused to pay the outstanding invoices and amounts owed to Double Eagle pursuant to the Agreement.

47.     With respect to each of the causes of action in tort asserted herein, Defendants Robert Genovese and Helmut Forero, and others to be identified during the course of discovery, are personally liable for those torts because under Georgia law, "[a]n officer of a corporation who takes part in the commission of a tort by the corporation is personally liable therefor." *See*,

*e.g.*, *Thorpe v. Sterling Equip. Co.*, 315 Ga. App. 909, 915 (2012).  Furthermore, "one who is damaged as the result of a tort that is actually committed by a corporate agent may sue either the individual agent, seeking to establish the agent's personal liability for the damages, or the corporation, seeking to establish its vicarious liability for the torts of its agent, or the injured party can sue both." *Id.* (quoting *Smith v. Hawks*, 182 Ga. App. 379, 384 (1987)). Messrs. Genoveses and Forero were officers or agents of the LLC Defendants and they actively participated in the torts identified in this Complaint.  In addition, Messrs. Genovese and Forero are personally liable due to their roles in the Defendants' fraudulently inducing Double Eagle to provide goods and services in Georgia for Defendants' clients as explained in more detail below.

**COUNT I**
**FRAUD**
**(Against All Defendants)**

48.     Plaintiff incorporates and restates the allegations in the preceding Paragraphs as if fully set forth herein.

49.     As set forth above, Defendants made numerous false representations regarding payment in an ongoing scheme to defraud and deceive Double Eagle.

50.     At the time Defendants made the representations, Defendants knew them to be false.

51.     Double Eagle justifiably and reasonably relied upon Defendants' false statements to Double Eagle's detriment. *See* Exhibit F, admitted RFA No. 20 ("Double Eagle justifiably relied on your fraudulent misrepresentations as set forth in Counts II and III of the Complaint.").

52.     As a direct and proximate result of Defendants' fraudulent actions and material misrepresentations, Double Eagle has suffered injury and damages.

53.     Defendants' actions and inactions are the result of its willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, so as to allow for the imposition of punitive damages against Defendants in accordance with Georgia law.

54.     Double Eagle requests an award of punitive damages sufficient to punish, penalize, and deter Defendants for their wrongful misconduct, in an amount to be determined at trial.

55.     Double Eagle is entitled to compensatory damages, punitive damages, attorneys' fees, and expenses incurred in bringing its claims, in amounts to be determined at trial.

## COUNT II
## FRAUDULENT INDUCEMENT
### (Against All Defendants)

56.     Plaintiff incorporates and restates the allegations in the preceding Paragraphs as if fully set forth herein.

57.     Plaintiff pleads this Count II in addition to Count I above.

58.     BG's payment of the Membership Cost and Additional Amenities was material to the Agreement.

59.     BG entered into the Agreement with no intention of paying Double Eagle the amounts it agreed to pay under the Agreement, i.e., the full Membership Cost and amounts for Additional Amenities as set forth in the Agreement. *See* Exhibit F, admitted RFA No. 15.

60.     Upon information and belief, BG modified the Agreement with no intention of paying Double Eagle the remaining amounts then due under the Agreement or to pay for the Additional Amenities it requested. *See* Exhibit F, admitted RFA No. 15 ("You entered into and modified the Agreement with no intention of paying Double Eagle the amounts you agreed to

- 12 -

pay under the Agreement, i.e., the full Membership Cost and amounts for Additional Amenities as set forth in the Agreement.").

61.     Upon information and belief, BG requested and received Additional Amenities pursuant to the Agreement with no intention of paying for them as agreed. *See* Exhibit F, admitted RFA No. 16 ("You requested and received Additional Amenities pursuant to the Agreement with no intention of paying for them as agreed.").

62.     Defendants' actions set forth above were unusual, suspicious, and inconsistent with a contracting party who had been acting in good faith.  Those actions included, but are not limited to, (a) falsely representing that they had sent a wire transfer to Double Eagle which they promptly terminated, (b) delivering to Double Eagle a written check during the Masters Tournament and then, after BG had received the Amenities and Additional Amenities, stopping payment on the check, and (c) when Double Eagle again demanded payment from Defendants, Defendants claimed that, "We have no knowledge of your company. We have never dealt with you."

63.     Defendants intended to deceive Double Eagle and induce Double Eagle to act in reliance upon their false representations. *See* Exhibit F, admitted RFA No. 19 ("You intended to deceive Double Eagle and induce Double Eagle to act in reliance upon your false representations as set forth in Counts II and III of the Complaint.").

64.     Double Eagle justifiably relied on Defendants' fraudulent misrepresentations. *See* Exhibit F, admitted RFA No. 20 ("Double Eagle justifiably relied on your fraudulent misrepresentations as set forth in Counts II and III of the Complaint.").

65.     If Double Eagle had been aware of Defendants' fraudulent scheme to obtain the Amenities and Additional Amenities without paying the agreed upon amounts, it would not have entered into the Agreement.

66.     BG failed to pay the remaining Membership Cost of One Hundred Twenty-Five Thousand Dollars ($125,000). *See* Exhibit F, admitted RFA No. 1 ("You breached the Agreement by failing to pay Double Eagle the remaining Membership Cost of $125,000 due under the Agreement.").

67.     BG failed to pay amounts invoiced for Additional Amenities as agreed. *See* Exhibit F, admitted RFA No. 2 ("You breached the Agreement by failing to pay Double Eagle Forty-Three Thousand Forty-One Dollars and Sixty-Six Cents ($43,041.66) for the Additional Amenities that you requested and received under the Agreement, within thirty (30) days of your receipt of the Invoice attached to the Complaint as Exhibit E.").

68.     Defendants fraudulently induced Double Eagle to enter into the Membership Agreement and the Addendum.

69.     Defendants fraudulently induced Double Eagle to provide BG the Amenities and Additional Amenities.

70.     Double Eagle has been injured and damaged as a direct and proximate result of Defendants' fraudulent misrepresentations and actions.

71.     Defendants' actions and inactions are the result of its willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences, so as to allow for the imposition of punitive damages against Defendants in accordance with Georgia law.

72.     Double Eagle requests an award of punitive damages sufficient to punish, penalize, and deter Defendants for their wrongful misconduct, in an amount to be determined at trial.

73.     Double Eagle is entitled to compensatory damages, punitive damages, attorneys' fees, and expenses incurred in bringing its claims, in amounts to be determined at trial.

**COUNT III**
**BREACH OF CONTRACT**
**(Against Mr. Genovese, BG Signature, and BG Capital)**

74.     Plaintiff hereby incorporates and restates the allegations in the preceding Paragraphs as if fully set forth herein.

75.     Plaintiff pleads this Count III in the alternative to Counts I and II above.

76.     Double Eagle has complied with all its responsibilities and obligations under the Agreement.

77.     BG breached the Agreement by failing to pay Double Eagle the agreed upon adjusted Membership Cost of Two Hundred Sixty-Five Thousand Dollars ($265,000) minus a credit of Twenty Thousand Dollars ($20,000).  *See* Exhibits A and B; and Exhibit F, admitted RFA No. 1 (quoted above).

78.     BG also breached the Agreement by failing to pay Double Eagle Forty-Three Thousand Forty-One Dollars and Sixty-Six Cents ($43,041.66) for the Additional Amenities it requested and received under the Agreement, within thirty (30) days of its receipt of the Invoice attached hereto as Exhibit E. *See* Exhibit F, admitted RFA No. 2 (quoted above).

79.     Double Eagle has been and continues to be damaged as a result of BG's breaches of the Agreement.  BG and Mr. Forero have caused Double Eagle unnecessary trouble and expense in breaching the Agreement and failing to pay amounts owed, invoiced, and demanded pursuant to the Agreement.  BG's and Mr. Forero's fraudulent actions have caused Double Eagle

unnecessary trouble and expense.  Defendants have acted in bad faith and been stubbornly litigious.

80.     Pursuant to O.C.G.A.§ 13-6-11, Double Eagle is entitled to an award of its reasonable attorneys' fees and expenses of litigation incurred in enforcing the Agreement, as a result of Defendants' breaches and tortious conduct.

81.     Double Eagle is entitled to compensatory damages, interest, attorneys' fees, and expenses incurred in bringing its claims, in amounts to be determined at trial.

**COUNT IV**
**ATTORNEYS' FEES AND COSTS (PURSUANT TO AGREEMENT)**
**(Against All Defendants)**

82.     Plaintiff incorporates and restates the allegations in Paragraphs 1 through and including 47, and 74 through and including 81 above as if fully set forth herein.

83.     The Agreement provides that "the prevailing party in any legal action under this Agreement shall have the right to be reimbursed for their reasonable attorneys' fees and other legal costs." *See* Exhibit A.

84.     Pursuant to the Agreement, Double Eagle seeks an award to reimburse it for its reasonable attorneys' fees and other legal costs incurred in connection with this action.

**COUNT V**
**UNIFORM VOIDABLE TRANSACTIONS ACT (O.C.G.A. § 18-2-70, *et seq.*)[3]**
**(Against All Defendants)**

85.     Plaintiff incorporates and restates the allegations in the preceding Paragraphs as if

---

[3] Through the Defendants' stipulations, the laws of the State of Georgia, i.e., Georgia's Uniform Voidable Transactions Act (O.C.G.A. § 18-2-70, *et seq.*), govern this claim regardless of the jurisdiction where Defendants were located when transfers were made. *See* Exhibit A.  The Membership Agreement at (unnumbered) p. 3 states that "any claim or dispute arising out of or related to this Agreement or the transactions contemplated hereby whether in contract, tort, or otherwise, shall he governed by and construed in accordance with the laws in effect in the State of Georgia in the United States without giving effect to its conflicts of law principles.".

fully set forth herein.

86.     Between October 1, 2015 and the present Defendants transferred over Ten Million dollars in cash out of BG Capital's Bank of America and IberiaBank accounts.

87.     Since the filing of this lawsuit in June 2017, Defendants have transferred over Two Million dollars in cash out of BG Capital's Bank of America and IberiaBank accounts.

88.     Robert "Bobby" Genovese ("Mr. Genovese") holds himself out to be the Chairman of Defendant BG Capital Management South Florida LLC. *See¸ e.g.*, Doc. 23-3, Affidavit of Robert Genovese.

89.     Mr. Genovese is the Manager of BG Big Yacht LLC.

90.     Mr. Genovese testified in this action via affidavit on behalf of BG, BG Big Yacht LLC, and all other named BG entities who entered an appearance in this case in support of a motion to quash Double Eagle's subpoena to Bank of America, N.A. *See*, *e.g.*, Doc. 23-3, Affidavit of Robert Genovese.

91.     Mr. Genovese testified that he was familiar with the ownership and business operations of BG and BG Big Yacht. *Id.* at ¶ 5.

92.     Mr. Genovese testified that from October 1, 2015 to the present (the production period set forth in the subpoena), "there have been no business connections of any kind between the Defendants [BG Capital and BG Signature] and the Non-Parties [BG Big Yacht included therein]." *Id.* at ¶ 7.

93.     Mr. Genovese also testified that from October 1, 2015 to the present, "there are no loans or other obligations owed by [BG Yacht and others] to the Defendants [BG Capital and BG Signature]." *Id.* at ¶ 8.

94.     Mr. Genovese further testified that from October 1, 2015 to the present, "there are

no contracts or other rights jointly held by [BG Yacht and others] and the Defendants [BG

Capital and BG Signature]."  *Id.* at ¶ 9.

95.      Yet, as confirmed by Bank of America and IberiaBank's records, between

October 1, 2015 and the present BG transferred over One Million Twenty Thousand and Nine

Hundred dollars ($1,020,900) in cash from BG Capital's bank accounts to BG Big Yacht LLC,

and an additional Twenty-Nine Thousand dollars ($29,000) in cash from BG Signature's

IberiaBank account to BG Big Yacht LLC.

96.      Since the filing of this lawsuit in June 2017, BG has transferred over One

Hundred Eighty-One Thousand dollars ($181,000) in cash to BG Big Yacht LLC. *See* **Exhibit I**

(IberiaBank Account Statements).

97.      Between October 1, 2015 and the present BG transferred over Eight Hundred

Sixty Thousand dollars ($860,000) in cash to Robert Genovese and for his benefit.

98.      Since the filing of this lawsuit in June 2017, BG has transferred over One

Hundred Ninety-Three Thousand dollars ($193,000) in cash to Robert Genovese and for his

benefit.

99.      Between October 1, 2015 and the present BG transferred, concealed or removed

the assets identified in Paragraphs 86, 87, and 95-98 above with the actual intent to hinder, delay,

or defraud Double Eagle. *See* Exhibit F, admitted RFA No.12 ("You have transferred, concealed

or removed assets with the actual intent to hinder, delay, or defraud Plaintiff").

100.     Between October 1, 2015 and the present BG transferred assets identified in

Paragraphs 86, 87, and 95-98 above without receiving a reasonably equivalent value in exchange

for the transfers while BG was engaged or was about to engage in a business or a transaction for

which the remaining assets of the debtor were unreasonably small in relation to the business or

transaction. *See* Exhibit F, admitted RFA No. 13 ("Between October 1, 2015 and the present, you have transferred assets or incurred obligations without receiving reasonably equivalent value in exchange for the transfers or obligations, while you were engaged or were about to be engaged in a business or transaction for which your remaining assets were unreasonably small in relation to the business or transaction."). *See also,* Genovese Affidavit, (Doc. 23-3) at ¶¶ 7, 8, 9.

101.    Between October 1, 2015 and the present BG transferred assets identified in Paragraphs 86, 87, and 95-98 above without receiving a reasonably equivalent value in exchange for the transfers while it intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due. *See* Exhibit F, admitted RFA No. 14 ("Between October 1, 2015 and the present, you have transferred assets or incurred obligations without receiving reasonably equivalent value in exchange for the transfers or obligations, while intending to incur, or believing, or when you reasonably should have believed, that you were incurring, debts beyond your ability to pay as they became due.").  *See also,* Genovese Affidavit (Doc. 23-3) at ¶¶ 7, 8, 9.

102.    On information and belief, BG does not presently have assets totaling in value up to the more than $168,000 in damages it caused and amounts it owes Double Eagle.

103.    At the time of the transfers identified in Paragraphs 86, 87, and 95-98 above, BG was or became insolvent.

104.    BG's transferees, including but not limited to Robert Genovese and BG Big Yacht LLC, all had actual, inquiry, and/or constructive notice of Double Eagle's pending litigation and claim against BG, and therefore could not have engaged in any such transfers in good faith.

105.     As set forth in Counts I through IV above, Double Eagle has a right to payment from BG, i.e., Double Eagle has a "claim" against BG as defined in the Uniform Voidable Transactions Act, O.C.G.A. § 18-2-70, *et seq.* ("UVTA"). O.C.G.A. § 18-2-71(3).

106.     At all relevant times herein, Double Eagle has been and is a "creditor" as to BG on the "claim," as defined in the UVTA. O.C.G.A. § 18-2-71(4).

107.     At all relevant times herein, BG has been and is a "debtor" as to Double Eagle on the "claim" and liable for the "debt," as those terms are defined in the UVTA. O.C.G.A. § 18-2-71(5) and (6).

108.     At all relevant times herein, Robert Genovese has been and is an "insider" as defined in the UVTA. O.C.G.A. § 18-2-71(8).

109.     The transfers identified in Paragraphs 86, 87, and 95-98 above constitute fraudulent voidable transfers pursuant to O.C.G.A. §§ 18-2-74 and 18-2-75, and are recoverable from Defendants and their transferees pursuant to O.C.G.A. §§ 18-2-77 and 18-2-78.

110.     Accordingly, Double Eagle is entitled to compensatory damages, punitive damages, attorneys' fees, and expenses incurred in bringing its claims, in amounts to be determined at trial.  Double Eagle is entitled to that relief against Defendants and their transferees, including but not limited to Robert Genovese and BG Big Yacht LLC, as provided in O.C.G.A. §§ 18-2-77 and 18-2-78.

## COUNT VI
## FLORIDA UNIFORM FRAUDULENT TRANSFER ACT (Fla. Stat. § 726.101, *et seq.*)
### (Against All Defendants)

111.     Plaintiff incorporates and restates the allegations in the preceding Paragraphs as if fully set forth herein.

112.     Plaintiff pleads this Count VI in the alternative to Count V above.

113.     As set forth in Counts I through IV above, Double Eagle has a right to payment from BG, i.e., Double Eagle has a "claim" against BG as defined in the Uniform Fraudulent Transfer Act, Fla. Stat. § 726.101, *et seq.* ("FUFTA"). Fla. Stat. § 726.102(4).

114.     At all relevant times herein, Double Eagle has been and is a "creditor" as to BG on the "claim," as defined in the FUFTA. Fla. Stat. § 726.102(5).

115.     At all relevant times herein, BG has been and is a "debtor" as to Double Eagle on the "claim" and liable for the "debt", as those terms are defined in the FUFTA. Fla. Stat. § 726.102(6) and (7).

116.     At all relevant times herein, Robert Genovese has been and is an "insider" as defined in the FUFTA. Fla. Stat. § 726.102(8).

117.     The transfers identified in Paragraphs 86, 87, and 95-98 above constitute fraudulent voidable transfers pursuant to Fla. Stat. § 726.105 and § 726.106, and are recoverable from Defendants and their transferees, pursuant to Fla. Stat. § 726.108 and § 726.109.

118.     Accordingly, Double Eagle is entitled to relief against Defendants and their transferees, including but not limited to Robert Genovese and BG Big Yacht LLC, as provided in Fla. Stat. § 726.108 and § 726.109.

**COUNT VII**
**ALTER EGO AND PIERCING THE CORPORATE VEILS**
**(Against Mr. Genovese, BG Capital and BG Signature)**

119.     Plaintiff hereby incorporates and restates the allegations in the preceding Paragraphs as if fully set forth herein.

120.     At all relevant times herein, Mr. Genovese exercised control over a pyramid of alleged companies, including without limitation the BG Defendants, their assets, and their employees. *See e.g.,* **Exhibit K**, Defendant BG Signature Letter of Employment (extending offer

of employment to Andy Irvine as "Vice President of BG Signature Properties at BG Capital Management reporting directly to me [Bobby Genovese]"); and Doc 23-3, Affidavit of Robert Genovese.

121.    Since October 1, 2015, the date BG entered into the Agreement with no intention of paying Double Eagle the amounts it agreed to pay under the Agreement, BG admits it has transferred substantially all of its assets to entities owned or controlled by Mr. Genovese. *See* Exhibit F, admitted RFA Nos. 8 ("Between October 1, 2015 and the present, you transferred assets to other entities owned directly or indirectly, in whole or in part, by Bobby Genovese."), 9 ("Between October 1, 2015 and the present, you transferred assets to other entities in which Bobby Genovese has served at any time as an officer, director, managing member, or member"), 10 ("Between October 1, 2015 and the present, you transferred assets with a combined value exceeding $168,000.00 to other entities owned directly or indirectly, in whole or in part by Bobby Genovese."), 11 (" ("Between October 1, 2015 and the present, you transferred assets with a combined value exceeding $168,000.00 to other entities in which Bobby Genovese has served at any time as an officer, director, managing member, or member.").

122.    Additionally, as set forth above, since executing the October 1, 2015 Agreement, BG has transferred over Eight Hundred Sixty Thousand dollars ($860,000) in cash directly to Robert Genovese and for his benefit.

123.    As set forth in Paragraphs 92 through 94 above, BG had no legitimate business purpose in transferring BG's assets to other entities owned or controlled by Robert Genovese. *See* Doc 23-3, Genovese Affidavit at ¶¶ 7, 8, 9.

124.    BG admits it transferred, concealed, or removed the assets with the actual intent to hinder, delay or defraud Double Eagle. *See* Exhibit F, admitted RFA No. 12.

125.     As set forth herein and as admitted by BG, Mr. Genovese has disregarded BG's corporate entity and made it a mere instrumentality for the transaction of his own affairs. *See Id.* at No. 22.

126.     As set forth herein and as admitted by BG, there is such a unity of interest and ownership between BG and Mr. Genovese that the separate personalities of the corporations and Mr. Genovese no longer exist. *See Id.* at No. 23.

127.      As set forth herein and as admitted by BG, Mr. Genovese and BG have disregarded the separateness of BG as legal entities by commingling on an interchangeable or joint basis or confusing the otherwise separate property, records, or control of BG with his own. *See Id.* at No. 24.

128.     As set forth herein and as admitted by BG, Mr. Genovese and BG have over-extended the privilege in their use of the corporate entities. *See Id.* at No. 25.  BG and Mr. Genovese's operation of the BG entities was a sham designed to defeat justice, perpetuate fraud, or to evade contractual or tort responsibility. *Id.*

129.     Mr. Genovese is seeking to use the separate corporate identities of Defendants BG to evade contractual obligations owed to Plaintiff.  Mr. Genovese and BG have functioned merely as the alter egos of one another, and in order to prevent injustice and the evasions of liability, the veils of his many purported entities should be pierced such that Mr. Genovese is held personally liable for all debts, obligations, judgments, liabilities, expenses and claims owed by BG to Plaintiff.

**WHEREFORE**, Plaintiff Double Eagle Club, Inc. prays for judgment in its favor and against Defendants as follows:

a) An award of compensatory and punitive damages for fraudulent inducement and fraud in an amount to be determined at trial;

b) In the alternative, an award of compensatory damages for breach of contract in an amount to be determined at trial;

c) An award of pre- and post-judgment interest;

d) An award of attorneys' fees and expenses of litigation pursuant to O.C.G.A. § 13-6-11;

e) An award of attorneys' fees and other legal costs incurred in connection with this action, as provided in the Agreement;

f) Injunctive relief to prevent Defendants from transferring assets;

g) Injunctive relief to freeze assets originating from BG in the possession, custody, or control of the Defendants and anyone with notice in active concert or participation with them;

h) To the extent that Defendants have already engaged in voidable or fraudulent transfers, that any such conveyances be declared void and that judgment herein be declared a lien on all such transferred assets and property;

i) Relief against Defendants as provided in O.C.G.A. §§ 18-2-77 and 18-2-78, and/or Fla. Stat. §§ 726.108 and 726.109;

j) That the corporate veils that Defendant Mr. Genovese has set up be pierced, and that he be held personally liable for the misconduct and liabilities of each and all of those alter ego entities; and

k) That Double Eagle recover such other and additional relief as this Court deems just and

appropriate.

Respectfully submitted, this 6th day of June, 2018.

THE MAXIM LAW FIRM, P.C.

<u>s/ Kevin A. Maxim</u>
Kevin A. Maxim
Georgia Bar No. 478580
Michelle Cohen Egan
Georgia Bar No. 174650
*Attorneys for Plaintiff*
*Double Eagle Club, Inc.*

The Maxim Law Firm, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia   30309
Telephone: (404) 924-4272
Fax: (404) 924-4273
E-mail: kmaxim@maximlawfirm.com
E-mail: megan@maximlawfirm.com

## <u>CERTIFICATE OF SERVICE</u>

       This is to certify that I have this day served a true and correct copy of the foregoing by

depositing a copy in the first class United States mail, pre-addressed and postage paid, and

addressed to the following:

                   BG Capital Management South Florida, LLC
                   and BG Signature Properties, LLC
                   c/o Bobby Genovese
                   1250 South Pine Island Road, Suite 500
                   Plantation, Florida 33324

                   BG Capital Management South Florida, LLC
                   and BG Signature Properties, LLC
                   c/o Bobby Genovese
                   12 Inlet Cay
                   Ocean Ridge, Florida 33435

Dated: June 6th, 2018

                                       <u>s/ Kevin A. Maxim</u>
                                       Kevin A. Maxim
                                       Georgia Bar No. 478580
                                         Michelle Cohen Egan
                                         Georgia Bar No. 174650
                                         The Maxim Law Firm, P.C.
                                         1718 Peachtree St., NW
                                         Suite 599
                                         Atlanta, Georgia   30309
                                         Phone: (404) 924-4272
                                         Fax:    (404) 924-4273
                                         E-mail: kmaxim@maximlawfirm.com
                                         E-mail: megan@maximlawfirm.com