**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION**

DOUBLE EAGLE CLUB, INC.,

     Plaintiff,

v.

BG CAPITAL MANAGEMENT SOUTH
FLORIDA, LLC and BG SIGNATURE
PROPERTIES, LLC,

     Defendants.

Civil Action No.
1:17-cv-00073-JRH-BKE

**PLAINTIFF DOUBLE EAGLE CLUB, INC.'S MOTION TO COMPEL
DEFENDANT ROBERT D. GENOVESE TO PRODUCE DISCOVERY,
FOR ATTORNEYS' FEES AND EXPENSES,
<u>AND BRIEF IN SUPPORT</u>**

**Table of Contents**

I.      FACTUAL BACKGROUND……………………………………………………….2

    •   Mr. Genovese's False Affidavit filed with this Court…………………………………3

    •   Additional, Preliminary Evidence of Mr. Genovese's
        Commingling and Fraudulent Transfers……………………………………………6


II.     THE DISCOVERY REQUESTS AT ISSUE………………………………………..9

        (A)   Double Eagle's Discovery Requests Addressed in the……………………………9
              proposed Consent Order

        (B)   Double Eagle's Requests for Production Nos. 36 and 37…………………………10

        (C)   Double Eagle's Requests for Production Nos. 45-48……………………………10


III.    SUMMARY OF RELEVANT CLAIMS AND ISSUES
        TO WHICH DISCOVERY IS DIRECTED………………………………………………...11


IV.     RELEVANT PROCEDURAL BACKGROUND…………………………………….15


V.      ARGUMENT AND CITATION OF AUTHORITY…………………………………16

        Table summarizing Mr. Genovese's deficient discovery responses…………………17-21

        A.    Interrogatories and Requests encompassed within draft Consent Order………...22

        B.    Request Nos. 36 and 37………………………………………………………….23

        C.    Request Nos. 45 – 48……………………………………………………………25


CONCLUSION……………………………………………………………………….28

        S.D. Ga. L.R. 26.5 and Fed. R. Civ. P. 37(a)(1) Certificate of Compliance……………29

**Table of Exhibits**

| Exhibit | Summary Description |
|---------|---------------------|
| A-1 | Double Eagle's First Interrogatories to Defendant Robert D. Genovese |
| A-2 | Double Eagle's First Requests for Production to Mr. Genovese |
| A-3 | Double Eagle's Second Requests for Production to Mr. Genovese |
| B-1 | Mr. Genovese's responses to First Interrogatories |
| B-2 | Mr. Genovese's responses to First Requests for Production |
| B-3 | Mr. Genovese's responses to Second Requests for Production |
| C | Draft Consent Order |
| D | Excerpts from BG Capital's 2015 income tax return |
| E | Excerpts from BG Capital's IberiaBank bank statements |
| F | City National Bank of Florida ("CNBF") Uniform Residential Loan Application x8765 |
| G | CNBF bank statements for Mr. Genovese's account number x8121 |
| H | CNBF loan history x8765 |
| I | CNBF wires history x8121 |
| J | BG Capital $25,061.00 check to CNBF re x8765, x7685 |
| K | BG Capital checks to pay Mr. Genovese's American Express account x33055 |
| L | BG Capital checks to Pinecrest School |
| M | BG Capital checks to Karen Genovese |
| N | E-mail string among counsel ending February 11, 2019 |
| O | E-mail string among counsel ending February 21, 2019 |
| P | Summary of Mr. Genovese's production |
| Q | Example Genovese American Express statement closing February 2018 |
| R | BG Capital Bank of America account x0837 showing Intuit QuickBooks purchases |
| S | CNBF Uniform Residential Loan Application x0001 |

Plaintiff Double Eagle Club, Inc. ("Plaintiff" or "Double Eagle"), by and through its counsel, hereby respectfully moves this Court for an Order compelling Defendant Robert D. Genovese to produce certain documents and other things, and ordering him to reimburse Double Eagle for the attorneys' fees and expenses that it has incurred in pursuing the discovery addressed herein.

More specifically, this motion arises from the failures of Defendant Robert D. Genovese to fulfill his obligations under Federal Rules of Civil Procedure 26, 33, and 34.  Pursuant to Fed. R. Civ. P. 37, Plaintiff Double Eagle hereby respectfully moves this Court to compel Mr. Genovese's complete responses to the following discovery requests:

(a) Double Eagle's Interrogatory Nos. 2, 3, 6, 7, and 14; and

(b) Double Eagle's Requests for Production Nos. 3, 4, 5, 10, 25-27, 54, and 55;[1] including compelling the certification reflected in the attached, proposed Consent Order.  *See* **Exhibit "C."**  All of these discovery requests were included in the draft Consent Order. The terms and conditions reflected in that draft Consent Order were reasonable, underscored by the fact that Mr. Genovese had agreed to all of the Consent Order's terms prior to his abruptly declaring on February 22, 2019, that he would no longer agree to anything within the proposed Consent Order that was many weeks in the making.

In addition, Double Eagle respectfully moves the Court to compel Mr. Genovese's complete and certified responses to:

---

[1]Double Eagle's Interrogatories and its Requests for Production are attached here to as **Exhibits "A-1"** through **"A-3,"** which are incorporated herein by reference.  Defendant Mr. Genovese's responses are attached hereto as **Exhibits "B-1"** through **"B-3,"** which responses are likewise incorporated herein by reference.

- 1 -

(c)  Double Eagle's Requests for Production numbered 36, 37, and 45-48,

which were removed from the proposed Consent Order.  Pursuant to Rule 37(a)(5), Double Eagle

respectfully requests an award of its attorneys' fees and expenses costs incurred in connection

with pursuing all of the foregoing discovery responses and in bringing this Motion.

## I.      FACTUAL BACKGROUND

Plaintiff Double Eagle Club, Inc. ("Double Eagle") brought this action via its original

Complaint, asserting claims of Breach of Contract, Fraudulent Inducement, and Fraud, and

seeking compensatory and punitive damages, and well as its attorneys' fees and expenses against

Defendants BG Capital Management South Florida, LLC ("BG Capital") and BG Signature

Properties, LLC ("BG Signature"). Double Eagle brought its claims in connection with amenities

and services that it provided to the Defendants at the 2016 Masters Tournament, which amenities

and services the Defendants fraudulently induced Double Eagle into providing based on a

purported $125,000 wire transfer that Defendants later canceled, and based on a purported check

for $125,000 for which Defendants had secretly stopped payment.  *See generally* Doc. 1.

Defendant Robert Genovese has testified in this action that he is the Chairman of BG

Capital (*see* Doc 23-3, and discussion below).[2]  BG Capital and BG Signature[3] refused to

participate in discovery,[4] and this Court granted Double Eagle's motion to compel. *See* Doc. 22.

---

[2] As such, Mr. Genovese caused BG Capital to admit all of Double Eagle's Requests for Admission.  *See generally* Doc. 1 (citing many of BG Capital's and BG Signature's admissions).

[3] Double Eagle discusses BG Capital and BG Signature herein for references purposes only, and naturally reserves and does not waive its well-founded position that these entities, among many others, were mere alter egos of Defendant Robert Genovese.

[4] *See* Pl. Double Eagle's Motion to Compel Production of Documents, for Attorneys' Fees and Costs, and Brief in Support (*See*, Doc. 19).

In addition, the Court granted Double Eagle's motion for its attorneys' fees and expenses in connection with that motion.  *See* Doc. 33.  To this day, BG Capital and BG Signature have ignored the Court's Order to respond to discovery (*see* Doc. 22), and likewise ignored the Court's Order to pay Double Eagle's attorneys' fees and expenses.  Put another way, much of the discovery addressed in this Motion was requested of BG Capital and BG Signature (*see* Doc. 19), and this Court ordered both of them to respond but Chairman Mr. Genovese had them ignore the Court's Orders. Mr. Genovese has now caused the Plaintiff and this Court to revisit many of the very same discovery requests to which this Court ordered Mr. Genovese's companies to respond over one year ago.[5]

- **Mr. Genovese's False Affidavit filed with this Court**

     While refusing to participate in discovery themselves, Mr. Genovese caused BG Capital and BG Signature to actively seek to thwart non-party discovery as well. They opposed Double Eagle's efforts to collect discovery from non-parties, namely, the banks reflected in the fraudulent indicia of payment that the Defendants presented to Double Eagle back at the time of the 2016 Masters.  As part of that obstruction effort, now-Defendant Robert D. Genovese first

---

[5] *See*, *e.g.*, *Elec. Workers Pension Tr. Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 383 (6th Cir. 2003):

> …if a corporate officer avoids a court's order to the corporation by failing to take action or attempt compliance, "they, no less than the corporation itself, are guilty of disobedience, and may be punished for contempt." *Wilson* [*v. United States*]*,* 221 U.S. [361] at 376, 31 S.Ct. 538. Moreover, we hold that because a civil contempt ruling either attempts to coerce compliance or compensate the complainant for losses, it is fully appropriate to impose judicial sanctions on the nonparty corporate officer. *See* [*United States v.*] *United Mine Workers,* 330 U.S. [258] at 303–04, 67 S.Ct. 677.

made his appearance in this action in an effort to quash Double Eagle's subpoena to Bank of America.  *See* Affidavit of Robert Genovese (Doc. 23-3).  In his Affidavit, Mr. Genovese testified that he is "the Chairman of Defendant BG Capital Management South Florida, LLC," and that he is "familiar with the ownership and business operations of" BG Capital, BG Signature, and the following list of purported entities – all but one of which bear his "BG" initials:

| | |
|---|---|
| ➢ BG Sebastian Inlet, LLC; | ➢ BG Oleta River LLC; |
| ➢ BG Florida Parks LLC; | ➢ Silver Springs Management LLC; |
| ➢ BG Big Yacht LLC; | ➢ BG Sun Plaza LLC; |
| ➢ BG Hugh Taylor Birch LLC; | ➢ BG Vero Beach Polo Club LLC; |
| ➢ BG John U Lloyd LLC; | ➢ BG Equestrian Vero Beach LLC; and |
| ➢ BG Farms Ocala LLC; | ➢ BG Cowboys Syracuse LLC. |

*See* Doc. 23-3 at ¶¶ 4-5 (which bullet-pointed entities Mr. Genovese called "the Non-Parties").

In his Affidavit, Mr. Genovese also testified that "[d]uring the production period set forth in plaintiff's subpoena [October 1, 2015 to the present[6]] there have been no business connections of any kind between the Defendants and the Non-Parties." *See* Doc. 23-3 at ¶ 7.  The Court denied the Defendants' attempt to quash the subpoena to Bank of America. *See* Doc. 26.

Based in part on the records obtained by subpoena, Double Eagle filed its First Amended Complaint.  *See* Doc. 42.  The First Amended Complaint added as Defendants Mr. Genovese, and Helmut Forero, and asserted claims of fraud, Fraudulent Inducement, Breach of Contract, Georgia's Uniform Voidable Transactions Act (the "UVTA," O.C.G.A. § 18-2-70 *et seq.*), Florida's Uniform Fraudulent Transfer Act (the "UFTA," Fla. Stat. § 726.101 *et seq.*), and Alter Ego and Piercing the Corporate Veils.  Double Eagle seeks through the First Amended

---

[6] *See* Double Eagle's Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Doc. 23-1), attached as Exhibit A to Special Motion to Quash, or in the Alternative, to Modify Plaintiff's Subpoena to Bank of America (Doc. 23).

Complaint relief including compensatory and punitive damages, attorneys' fees and expenses of litigation, piercing the corporate veils, and relief available under the Georgia UVTA and/or Florida's UFTA.

Documents uncovered in this action have proven Mr. Genovese's Affidavit to be plainly false. As just one example, Mr. Genovese produced without objection all or part of BG Capital's 2015 income tax return in response to Double Eagle's Request for Production seeking BG Capital's income tax returns 2015 to present. *See* Request Nos. 36 and 37, quoted below. The portions of that tax return that were produced reveal that, contrary to Mr. Genovese's "no business connections of any kind between the Defendants and the Non-Parties" representation to this Court, Mr. Genovese's had BG Capital declare in its 2015 income tax return filing that:

```
This tax return is for BG Capital Management South
Florida, LLC FEIN ██████5141.  BG Capital Management
South Florida, LLC is the sole member/owner of multiple
entities which are disregarded.  The disregarded entities
do not file separate tax returns, but are rather included
in this tax return.  The disregarded entities included
in this tax return include:
```

➤ BG Equestrian Vero Beach, LLC; …

➤ BG Sun Plaza, LLC;…

➤ Silver Springs Management, LLC;

➤ BG Farms Ocala, LLC;

➤ BG John U Lloyd, LLC;

➤ BG Vero Beach Polo Club, LLC;

➤ BG Hugh Taylor Birch, LLC; and

➤ BG Oleta River LLC.

*See* redacted excerpt from BG Capital's 2015 Federal Income Tax Return (attached as **Exhibit "D"**) (those Non-Parties disregarded and incorporated into BG Capital's income tax returns are

shown in highlight in the excerpt).  Each of these entities was included in Mr. Genovese's false "Non-Parties" testimony.  *See* Doc. 23-3.  It is also noteworthy that, included on the list above of disregarded entities is Defendant BG Signature Properties, LLC, and thus by Defendants' reckoning BG Capital the sole member/owner of BG Signature, and Mr. Genovese purports to be the Chairman of that sole member.  *Id. See also* Genovese Affid., Doc. 23-3.  The banking records produced by IberiaBank, with respect to BG Capital's account there, also reveal well more than $500,000 worth of transfers into BG Capital's account at that bank, which were in turn transferred to BG Big Yacht.  BG Big Yacht is also one of the entities that Mr. Genovese falsely identified in Doc. 23-3 as have "no business connection of any kind" with BG Capital.  *See* excerpts from IberiaBank bank statements, attached as **Exhibit "E."**

- **Additional, Preliminary Evidence of Mr. Genovese's Commingling and Fraudulent Transfers**

Additional production from the various banks has revealed that Mr. Genovese used a network of various banks to funnel money out of BG Capital for his own personal use and benefit.  *See also* First Amended Complaint at ¶¶ 95-98.

In conjunction with this motion, Double Eagle has moved to file under seal two Microsoft Excel spreadsheets produced by Bank of America, reflecting the hundreds of wires in and out of BG Capital's bank account no. **x0837**.[7]  *See* Plaintiff Double Eagle Club, Inc.'s Motion for, and Notice of, Filing Electronic Media Under Seal (delivered to the Clerk of Court on March 1, 2019, but not yet filed as of the time of this writing).

---

[7] In this filing, the first introduction of an Exhibit or a set of account numbers is noted in bold text, for ease of later reference.

As just a few examples of Mr. Genovese's commingling and fraud, recent production from City National Bank of Florida ("CNBF") revealed that Mr. Genovese and his wife, Karen Genovese applied for a $2,000,000 loan for a "secondary residence" located in Ft. Lauderdale, Florida. *See* **Exhibit "F."**  CNBF now identifies that loan account with account number **x8765**.

Often, Mr. Genovese had BG Capital simply wire money from its Bank of America x0837 bank account, to Mr. Genovese's personal checking account at CNBF **x8121**, which funds in turn paid down Mr. Genovese's CNBF residential mortgage loan account x8765. Examples of Mr. Genovese's wire transfers from BG Capital's x0837 bank account can been seen on the spreadsheet named "TDA0019A-US-ACCOUNT-SEARCH - FROM DVD," in rows 527, 548, 588, 601, 608, and 610 (with column AH in those rows identifying the "Credit ID" as being CNBF, and column AR in those rows identifies the "Beneficiary ID" bank account number as x8121).

This same pattern is reflected in Bank of America's more recently-produced spreadsheet identified by the name "BOA - BGCMSF x0837 - 2017DEC01 - 2018OCT17 - Wires Spreadsheet D103018000093A WIRES," in rows 38 and 41 of that spreadsheet.  *See also* compilation of Mr. Genovese's CNBF x8121 account statements attached as **Exhibit "G"** (reflecting incoming receipts from BG Capital, which were almost immediately applied to pay Mr. Genovese's residential mortgage loan account x8765), and CNBF's x8765 loan history document attached as **Exhibit "H"** (reflecting payments made on loan account x8765 from x8121).  *See also* CNBF's records regarding wires from BG Capital's x0837 account into Mr. Genovese's personal CNBF x8121 account, attached as **Exhibit "I."**  Mr. Genovese sometimes had BG Capital write a check from its x0837 account to pay his residential mortgage loan account x8765 at CNBF.  *See* BG Capital's $25,016.00 check (attached as **Exhibit "J"**).

Mr. Genovese also paid his personal credit card accounts with BG Capital funds.  For example, Mr. Genovese had a TD Aeroplan Visa credit account identified by the account number **x7278**.  As just one example, Bank of America's spreadsheet reflecting wires out of BG Capital's account, "BOA - BGCMSF x0837 - 2017DEC01 - 2018OCT17 - Wires Spreadsheet D103018000093A WIRES," shows seventeen payments totaling $83,400 from BG Capital's account x0837 to that x7278 Visa account during the period December 5, 2017, through September 18, 2018 alone.

The Bank of America wire spreadsheets also reflect Mr. Genovese directing over $180,000 to pay Mr. Genovese's personal Visa card account ending in **x3691**.  *See* Bank of America spreadsheet named "TDA0019A-US-ACCOUNT-SEARCH - FROM DVD," in rows 149 (*see*, *e.g.*, column AV: "VISA CARD BOBBY GENOVESE"), 173, 178, 181, 185, 192, 196, 199, 203, and 208 (with column AR in those rows identifying the "Beneficiary ID" as credit card account number x3691).

Mr. Genovese also had BG Capital pay:

- his personal American Express account, **x33055** (*see*, *e.g.*, $26,000 in checks drawn on BG Capital's x0837 account, attached as **Exhibit "K"**);

- private school tuition and expenses (*see* $32,764.87 in checks to "Pinecrest School," attached as **Exhibit "L"**); and

- checks for $700 for "Utilities," for $2,500 for the Florida Power & Light ("FPL") bill and roofing expenses, and for $2,000 with no explanation to his wife, Karen Genovese. *See* checks to Karen Genovese, attached as **Exhibit "M."**

Despite Mr. Genovese transferring hundreds of thousands out of BG Capital to his personal use, he has repeatedly boasted in this action that he "has not filed individual income tax

returns in the United States and is not aware of any requirement that he do so.  Moreover, [he]

has not filed individual income tax returns in any taxing jurisdiction outside of the United States

and he is not aware of any requirement that he do so." *See*, *e.g.*, February 11, 2019, 2:31 p.m. e-

mail from Mr. Genovese's counsel of record (attached as **Exhibit "N"**).[8]

While fraudulently transferring hundreds of thousands out of BG Capital, BG Capital's

Chairman Mr. Genovese has directed BG Capital to ignore this Court's Order that BG Capital

pay Double Eagle – no later than March 26, 2018 – $4,490.00 in attorneys' fees and costs

incurred as the result of BG Capital's discovery abuses in this action.

Just as before Mr. Genovese was formally named a Defendant in this action, he continues

to obstruct discovery without regard to Federal law, the Federal Rules, or the truth.

## II.   THE DISCOVERY REQUESTS AT ISSUE

### (A)   Double Eagle's Discovery Requests Addressed in the proposed Consent Order

As noted above, the Double Eagle discovery requests that were the subject of hours of

conversation, and resolutions to which Mr. Genovese consented before rejecting the resolutions

outright, were (a) Double Eagle's Interrogatory Nos. 2, 3, 6, 7, and 14; and (b) Double Eagle's

Requests for Production Nos. 3, 4, 5, 10, 25-27, 54, and 55.  Those requests are attached in

- Double Eagle's First Interrogatories (Ex. "A-1");

- its First Requests for Production (Ex. "A-2"); and

- its Second Requests for Production (Ex. "A-3").

---

[8] *See also* draft Consent Order (adding "or joint" after "individual" in Mr. Genovese's representations above), and Mr. Genovese's counsel's apparent consent to same after removal of Requests Nos. 36 and 37 (*see* February 21, 2019, 3:00 p.m. e-mail, attached as **Exhibit "O"**). The addition of the phrase "or joint" to the Consent Order was flagged for Mr. Genovese days earlier in that same e-mail string, in an e-mail sent February 15, 2019 11:32 AM by counsel for Double Eagle.

Mr. Genovese's responses are attached as Exs. "B-1" through "B-3," respectively. The requests and responses are incorporated herein by reference, and have been summarized in the table located below in this brief.

**(B) Double Eagle's Requests for Production Nos. 36 and 37**

The requests in this section (B), and section (C) below, were removed from the draft Consent Order, and squarely remain the subject of Double Eagle's motion to compel.

**Request for Production No. 36.:**  Please produce any and all federal and state income tax returns filed by or on behalf of BG Capital at any time between and including the year 2015 and the present.

**Mr. Genovese's Response:**

Defendant's response to this Request for Production will be provided for inspection and copying as under Rule 34.

**Request for Production No. 37.:**  Please produce any and all federal and state income tax returns filed by or on behalf of BG Signature at any time between and including the year 2015 and the present.

**Mr. Genovese's Response:**

Defendant does not have documents responsive to this Request.

**(C)     Double Eagle's Requests for Production Nos. 45-48**

**Request for Production No. 45.:**  Please produce your financial and accounting records reflecting your financial status and net worth as of October 1, 2015, June 29, 2017, June 6, 2018, and the day before the date of your response to these Requests.

**Request for Production No. 46:**  Please produce the financial and accounting records reflecting BG Capital's financial status and net worth as of October 1, 2015, June 29, 2017, June 6, 2018, and the day before the date of your response to these Requests.

**Request for Production No. 47:** Please produce the financial and accounting records reflecting BG Signature's financial status and net worth as of October 1, 2015, June 29, 2017, June 6, 2018, and the day before the date of your response to these Requests.

**Request for Production No. 48:**  Please produce the financial statements and balance sheets of BG Signature and BG Capital for the years 2015, 2016, and 2017, and 2018 to the present.

**Mr. Genovese's Response (same, copied-and-pasted response to each of these Requests):**

Defendant objects to this interrogatory to the extent that, in substance, it has been previously propounded.  Plaintiff has previously sought the requested information by issuance of subpoenas.

Defendant further objects to the Interrogatories to the extent that it is overly broad, unduly burdensome, abusive, oppressive, harassing and exceeds this Defendants ability to respond.

Defendant objects to this Request to the extent that the discovery sought is unreasonably cumulative or duplicative and can be obtained from some other source that is more convenient, less burdensome, or less expensive.

III.    **SUMMARY OF RELEVANT CLAIMS AND ISSUES TO WHICH DISCOVERY IS DIRECTED**

The Requests that are the subject of this motion are generally directed to Double Eagle's Alter Ego/Veil Piercing, and Georgia UVTA and Florida UFTA claims.

Georgia's appellate Courts have found the following, non-exclusive list of evidence and issues relevant and material to alter ego/veil piercing claims:

**Stripping assets:** "[E]vidence that [defendants] seized assets in order to strip the Corporation of assets necessary to pay existing debts." *See*, *e.g.*, *Hickman v. Hyzer*, 261 Ga. 38, 40 (1991);

**Fraudulent intent:** Evidence "indicat[ing] fraudulent intent." *Id.*;

**Commingling:** Evidence "that [defendants commingle[d] any of [their] personal funds with the corporate funds or use[d] any corporate funds for personal purposes." *Id.  See also Speir v. Krieger*, 235 Ga. App. 392, 399 (1998) (evidence of "a commingling and confusion of properties, records, control, etc."); *Mecca Constr., Inc. v. Maestro Invs., LLC*, 320 Ga. App. 34, 44 (2013) (evidence that "a corporate officer, or owner… has abused the corporate form by commingling personal and corporate assets");

**Regard for corporate form:** Evidence "the corporate form was disregarded." *Hickman*, 261 Ga. at 40; *see also Cobra 4 Enters. v. Powell-Newman*, 336 Ga. App. 609, 613 (2016) (evidence that defendant "ignored corporate formalities with respect to [the company]," such as the "fail[ure] to hold shareholder meetings or elections of corporate officers;"

**Sham corporation:** Evidence "that the Corporation was a sham." *Id.* at 41;

**Misrepresentations:** Evidence "that [defendants] made false or misleading representations to the" plaintiff.  *Id.*;

**Fraud:** "Evidence of fraud." *Id.*;

**Evading tort responsibility:** Evidence of "where a party has over extended his privilege in the use of a corporate entity in order to defeat justice, [perpetrate] fraud or to evade contractual or tort responsibility." *Speir v. Krieger*, 235 Ga. App. 392, 396 (1998);

As more thoroughly reflected in the Georgia UVTA and Florida UFTA statutes cited below, Double Eagle's claims and Defendants' actions have given rise to issues including but not limited to the following:

O.C.G.A. § 18-2-71 / F.S.A. § 726.102:

**Assets; Transfers:** What transfers Defendants have made, including "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset and includes payment of money, release, lease, and creation of a lien or other encumbrance."

O.C.G.A. § 18-2-72 / F.S.A. § 726.103:

**Solvency:**  Whether Defendants were and remained solvent before and after the transfers, including whether **"**at a fair valuation, the sum of the debtor's debts is greater than the sum of the debtor's assets"; and

Identifying so as to specifically ***exclude*** from that valuation any "property that has been

- 12 -

transferred, concealed, or removed with intent to hinder, delay, or defraud creditors or that has been transferred in a manner making the transfer voidable under this article."

O.C.G.A. § 18-2-73 / F.S.A. § 726.104:

    **Value:** What value allegedly given to the Defendants for their transfers, including what "property [was] transferred or what antecedent debt [was] secured or satisfied," and

    **Transferee's Promises:** Identifying so as to *exclude* from "value" any "unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person."

O.C.G.A. § 18-2-74 / F.S.A. § 726.105:

    **Intent:** Whether Defendants made their transfers "[w]ith actual intent to hinder, delay, or defraud any creditor of the debtor";

    **Value:** Whether Defendants received "reasonably equivalent value in exchange for the transfer or obligation, and the debtor";

    **Solvency:** Whether Defendants' "remaining assets … were unreasonably small in relation to the business or transaction";

    **Intent:** Whether Defendants "[i]ntended to incur, or believed or reasonably should have believed that he or she would incur, debts beyond his or her ability to pay as they became due";

    **Intent:** Defendants' intent in making the transfers, including what "badges of fraud" factors exist, including but not limited to the eleven factors listed in § 18-2-74(b), such as:

Whether "[t]he transfer or obligation was disclosed or concealed;"

Whether "[t]he transfer was of substantially all of the debtor's assets;"

Whether "[b]efore the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;"

Whether "[t]he debtor removed or concealed assets;"

Whether "[t]he debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;"

O.C.G.A. § 18-2-75 / F.S.A. § 726.106:

**Value:** Whether Defendants "receiv[ed] a reasonably equivalent value in exchange for the transfer or obligation";

**Solvency:** Whether the Defendants "w[ere] insolvent at that time or the [Defendants] became insolvent as a result of the transfer or obligation";

**Insiders:** Whether Defendants' transfers were made "to an insider for an antecedent debt,"

**Solvency:** Whether Defendants were "insolvent at that time": and

**Insider Intent:** Whether "the insider had reasonable cause to believe that the [Defendants] w[ere] insolvent.

O.C.G.A. § 18-2-77 / F.S.A. § 726.108:

**Transferee Identity:** To whom the Defendants' transfers were made;

O.C.G.A. § 18-2-78 / F.S.A. § 726.109:

**Transferee's Knowledge and Intent:** Whether Defendants' transferees received the transfers "in good faith";

**Value:** Whether Defendants' transferees received the transfers "for a reasonably equivalent value";

**Transferee Identity:** Identifying Defendants' "first transferees"; and

**Subsequent Transferee Identity:** Identifying the "immediate or mediate transferee of the first transferee."

As reflected in the foregoing, there can be no reasonable doubt whether the income tax returns, and internal accounting records kept by the Defendants, are directly relevant to the alter ego/veil piercing and UVTA and UFTA claims asserted by Double Eagle here.

Discovery directed to circumstantial evidence, such as financial records and the like, is well-warranted in light of the many ways in which fraud is relevant to Double Eagle's alter ego, veil piercing, and UVTA/UFTA claims.

The Eleventh Circuit has explained that "[b]ecause fraud in itself is by nature subtle and often difficult to prove, the Georgia courts have held that slight circumstances may be sufficient to prove its existence." *Wilson v. S & L Acquisition*

- 14 -

*Co.*, 940 F. 2d 1429, 1440 (11th Cir. 1991). "Fraud is by definition subtle 'and can be accomplished in an infinite number of ways.'" *Tr.*, 2012 WL 12836517, at *8 (quoting *Federal Ins. Co. v. Westside Supply Co.*, 590 S.E.2d 224, 229 (Ga. Ct. App. 2003)). "As a result, fraud is 'seldom ever susceptible of direct proof, [and] recourse to circumstantial evidence usually is required.'" *Id.* (quoting *Lloyd v. Kramer*, 503 S.E.2d 632, 634 (Ga. Ct. App. 1998)).

*Stamey Cattle Co., LLP,  et al. v. Wright et al.*, 5:17-CV-147, 2019 WL 722597, at *17 (S.D. Ga. Feb. 19, 2019) (Godbey Wood, J.).

## IV.    RELEVANT PROCEDURAL BACKGROUND

The date 33 days after the September 24, 2018, service of the above-quoted Interrogatories and Requests for Production expired on October 27, 2018.  Double Eagle agreed to Defendant Mr. Genovese's request for an extension of time until November 7, 2018 in which to respond to the requests.  More than 100 days have now passed since that discovery due date. Mr. Genovese's responses to the Second Requests for Production were due on November 26, 2019, also nearly 100 days ago.  Mr. Genovese made limited productions of documents of November 8th and 16th, 2018, and has produced nothing since.

Pursuant to Fed. R. Civ. P. 37(a)(1), the undersigned counsel hereby certifies that Double Eagle through its counsel has in good faith conferred repeatedly with Defendant Mr. Genovese through his counsel of record, including two teleconferences before the assistance of the Court, and four teleconferences including Court-held Discovery Conferences by telephone on January 18, 2019,[9] February 4, 2019,[10] February 13, 2019,[11] and February 22, 2019.[12]

---

[9] *See* Docket Entry 64 and Order, Doc. 65.
[10] *See*  Docket Entry 66 and Order, Doc. 67.
[11] *See*  Docket Entry 69 and Order, Doc. 70.
[12] *See* Docket Entry 71.

As reflected in the e-mail string attached as Exhibit "O," Mr. Genovese had agreed to all revisions in the Consent Order but for the removal of Requests Nos. 36 and 37.

## V.   ARGUMENT AND CITATION OF AUTHORITY

As a general overview, Mr. Genovese largely ignored the requirements of Federal Rules of Civil Procedure 33 and 34 in responding to Double Eagle's discovery requests.  For example, Rule 33(b)(3) requires that "[e]ach interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."  Rule 33(b)(4) also requires that "[t]he grounds for objecting to an interrogatory ***must be stated with specificity***.  Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." (Emphasis added).[13]  The Advisory Committee Notes to the 1993 Amendments to Rule 33 recognized new language "emphasiz[ing] the duty of the responding party to provide full answers to the extent not objectionable."  Those same Notes observed that "Paragraph (4) [was] added to make clear that objections must be specifically justified, and that unstated or untimely grounds for objection

---

[13]Courts have generally held that, like Rule 33, responses to Rule 34 requests for documents and other things must be timely made or the objections are waived. *See, e.g.*, *In re United States*, 864 F.2d 1153, 1156 (5th Cir. 1989) ("as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived."); *Nyugen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999); *Augusta, Georgia v. St. Paul Fire & Marine Ins. Co.*, CV 104-173, 2007 WL 9700906, at *2–3 (Barfield, J., S.D. Ga. Apr. 19, 2007) ("Unlike Rule 33, Rule 34 does not explicitly provide that untimely objections are waived. Nevertheless, 'there is no reason to interpret the two rules differently. To the contrary, courts have held that the failure to timely file an objection to a request for production of documents may be deemed a waiver.'") (quoting *Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005)); *Ahmed v. Kifle*, 1:12-CV-2697-JEC-ECS, 2014 WL 11829335, at *2 (N.D. Ga. June 18, 2014); *Jones v. Alta Colleges, Inc.*, 2009 WL 10665816  at *3 (Vineyard, J., Aug, 25, 2009); *Bell v. Mallin*, 2018 WL 3067845 at *2 (Arnold Sansone, J., June 21, 2018).

ordinarily are waived."

In turn, Rule 34(b)(2)(B) requires that,

> For each item or category, the response ***must either state*** that inspection and related activities will be permitted as requested ***or*** state with specificity the grounds for objecting to the request, ***including the reasons***. The responding party ***may state*** that it will produce copies of documents or of electronically stored information instead of permitting inspection. The production ***must then be completed no later than*** the time for inspection specified in the request or another reasonable time specified in the response.

(Emphasis added).

Rule 34 (b)(2)(C) requires that "[a]n objection ***must state*** whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request ***must specify*** the part and permit inspection of the rest."  (Emphasis added).

The table below summarizes Mr. Genovese's deficient responses to the discovery requests that are the subject of this Motion:

| Defendant Robert Genovese's Deficient Responses to Interrogatories | | | |
|---|---|---|---|
| INT # | Sought | Genovese Objections | Response or Production? |
| 2 | Identify communications re First Amended Complaint, defenses thereto | "Previously propounded" Overly broad "Exceeds this Defendants [sic] ability to respond" | None |
| 3 | Identify lawsuits last 10 years | Overly broad Harassing "Seek [sic] information that has been surrendered by this Defendant to his legal representation" | Partial list of plaintiffs' names only |
| 6 | Details re payments Defendants received re the 2016 Masters | None | Table of alleged financial figures: |

| | | | **Receipts** | |
|---|---|---|---|---|
| | | | 12-Jan-16 $ 25,000.00<br>13-Jan-16 $ 25,000.00<br>22-Feb-16 $ 38,640.00<br>26-Feb-16 $ 11,000.00<br>28-Mar-16 $ 16,800.00<br>28-Mar-16 $ 13,000.00<br>29-Mar-16 $ 42,500.00<br><br>**TOTAL**   $ 171,940.00<br><br>Defendant alleges that he has "no identities" and "no documents" in connection with any of the listed payments | |
| 7 | Identify your bank accounts receiving transferred funds from BG Capital, BG Signature – 9/1/15 to present | Oppressive<br>"Previously propounded"<br>Overly broad<br>"Continuous discovery"<br>"Seeks information re Defendants [sic] spouse" | None | |
| 14 | Identify payments to Plaintiff re Agreement that were made, initiated, and/or canceled – including identities of persons who authorized, initiated, or canceled | "Previously propounded"<br>"Plaintiff is in possession of said information" | None | |

| **Defendant Robert Genovese's Deficient Responses to Document Requests** | | | |
|---|---|---|---|
| **RPD #** | **Sought** | **Genovese Objections** | **Response or Production?** |
| 3 | Communications, documents between you or your behalf, and Plaintiff or Intersport | None - "Defendant does not have" | None |
| 4 | Communications, documents between you or your behalf, and BG re Masters | None - "Defendant does not have" | None |
| 5 | Andy Irvine personnel file | None - "Defendant does not have" | None |
| 6 | Morgen Mills personnel file | None - "Defendant does not have" | None |
| 7 | Helmut Forero personnel file | None - "Defendant does not have" | None |
| 8 | Patricia Marlow personnel file | None - "Defendant does not have" | None |
| 9 | Kristie Ward personnel file | None - "Defendant does not have" | None |

| | | | |
|---|---|---|---|
| 10 | Sven Nelson personnel file | None - "Defendant does not have" | None |
| 11 | Communications with Andy Irvine | None - "Defendant does not have" | None |
| 25 | Dominion Bank (Toronto) statements re account number x3690 – October 2015 to present, including check images | None | "Will be provided" None |
| 26 | HSBC Canada statements re account number x4203 – October 2015 to present, including check images | None - "Defendant does not have" | None |
| 27 | Account statements re The Dominion Bank (Toronto) Visa account nos. x3691, x7278 – October 15, 2015 to present | None | "Will be provided" Produced some statements, but missing all of February – May 2016 (including missing April 2016 Masters Tournament timeframe), August 2016, December 2016, and June 2018 |
| 35 | Federal, state tax returns filed by you or your behalf 2015 - present | None - "Defendant does not have" | None |
| 36 | Federal, state tax returns filed by BG Capital or its behalf 2015 - present | None | "Will be provided" Only portions of 2015 return produced |
| 37 | Federal, state tax returns filed by BG Signature or its behalf 2015 - present | None - "Defendant does not have" | None |
| 45 | Financial and accounting records re Mr. Genovese's financial status, net worth as of certain dates | "Previously propounded" "Plaintiff previously subpoenaed" Oppressive "Cumulative or duplicative" Go get from "some other source" | None |
| 46 | Financial and accounting records re BG Capital's financial status, net worth as of certain dates | "Previously propounded" "Plaintiff previously subpoenaed" Oppressive | None |

- 19 -

| | | "Cumulative or duplicative"<br>Go get from "some other source" | |
|---|---|---|---|
| 47 | Financial and accounting records re BG Signature's financial status, net worth as of certain dates | "Previously propounded"<br>"Plaintiff previously subpoenaed"<br>Oppressive<br>"Cumulative or duplicative"<br>Go get from "some other source" | None |
| 48 | Financial statements, balance sheets for BG Signature, BG Capital 2015-present | "Previously propounded"<br>"Plaintiff previously subpoenaed"<br>Oppressive<br>"Cumulative or duplicative"<br>Go get from "some other source" | Only objected, but then produced only purported BGCMSF "financial statements" 2015, 2016, and not in native format |
| 54 | All periodic statements for AmEx accounts ever paid with BG Capital, BG Signature funds, including without limitation, the four attached check images, and the following payments:<br><br>03/07/16 AMERICAN EXPRESS DES:ACH Pmt ID:W6590<br>        INDN:BOBBY GENOVESE CO ID:1133133497 WEB 902367014713042   519.99<br><br>04/19/16 AMERICAN EXPRESS DES:ACH Pmt ID:S7186<br>        INDN:BOBBY GENOVESE CO        ID:1133133497 PPD 902310017546011 20,864.66 | "Previously propounded"<br>"Plaintiff previously subpoenaed"<br>Oppressive<br>"Cumulative or duplicative"<br>Go get from "some other source" | None indicated |

| | | | |
|---|---|---|---|
| | 05/05/16 AMERICAN EXPRESS DES:ACH Pmt ID:S8346          INDN:BOBBY GENOVESE CO ID:1133133497 PPD 902326015323276 40,000.00 | | |
| 55 | All periodic statements for credit card accounts ever paid with BG Capital or BG Signature funds, <u>other than AmEx</u> | "Previously propounded" "Plaintiff previously subpoenaed" Oppressive "Cumulative or duplicative" Go get from "some other source" | None indicated |

As the table above and Mr. Genovese's actual, attached written responses reflect, with respect to many of the discovery requests above he waived any objections.  Often, he responded that he personally did not have the requested documents, but plainly failed to address what he had in his broader, possession custody, or control (such as the responsive information and documents held by any of his BG entities and other entities that he owns and controls).

Where he did object, he did so without *specificity* and without *reasons* as required by the Rules.  Further, he appears to have ignored entirely his duty "to provide full answers to the extent not objectionable."  Underscoring Mr. Genovese's disregard for the Rules is the fact that his final thirteen document request responses are the very same, copied-and-pasted block of objections lacking any specificity or reasons.  *See* Exs. "B-2" – "B-3" (and Mr. Genovese's copy-and-paste objections in response to Request Nos. 43 – 55 therein).

To date, Mr. Genovese has made small productions of documents on November 8th and 16th, 2018.  A summary inventory of his production is attached as **Exhibit "P."**  As the inventory

reflects, Mr. Genovese produced a number of statements relating to his TD Aeroplan Visa Platinum account, yet conspicuously missing were those account statements for his and his family's purchases during the time of the April 2016 Masters Tournament. *Id.* (noting that production was missing all of February – May 2016 statements (including missing April 2016 Masters Tournament timeframe), as well as his August 2016, December 2016, and June 2018 statements).

As for his personal American Express credit card statements, Mr. Genovese withheld any statements that showed actual purchases. Instead, he cherry-picked and produced two year-end "Spending Summaries," certain statements dated February 2018 – October 2018 (reflecting only the account balance, not any specific purchases – *see* example February 2018 AmEx statement attached as **Exhibit "Q"**), and three American Express Centurion statements dated October-December 2015.

Among the smattering of documents that Mr. Genovese produced was portions of BG Capital's 2015 Federal income tax return, and purported 2015 and 2016 BG Capital financial statements."

## A.  Interrogatories and Requests encompassed within draft Consent Order

In an attempt to address Mr. Genovese's obvious discovery response deficiencies, this Court and counsel for the Plaintiff and Defendants engaged in hours of teleconference time working through issues such as: the viability of Mr. Genovese's copy-and-paste objections; what Mr. Genovese had beyond his mere "possession" and what actually he had in this "possession custody or control;" a means for Mr. Genovese to certify his many claims that he had no responsive documents; and a mutually-agreeable, additional time in which Mr. Genovese might be permitted to supplement his discovery responses.

All of the terms of a proposed Consent Order had been agreed, but for the document request numbers 36 and 37 seeking BG Capital and BG Signature tax returns.  Mr. Genovese's counsel asked that they be removed from the Consent Order.  *See* e-mail dated Thursday, February 21, 2019 3:00 PM (attached as Ex. "O").

By the time of the fourth discovery teleconference at 10:30 a.m. the next morning, however, Mr. Genovese declared that he would agree to nothing contained in the Consent Order, and that further discussions about his responses were "a waste of time."

As demonstrated above, Mr. Genovese's objections and responses address above were plainly deficient.  He strung along the Court and Plaintiff through many hours in the discovery conference process, based on incremental consents, and in the end he unraveled all of that work and progress in a remarkable burst of bad faith.

With respect to the discovery requests addressed in the most recent version of the Consent Order, then, and for these reasons demonstrated in the recordings of the four conference calls,[14] Double Eagle respectfully requests that the Court grant its motion to compel. The relief that Double Eagle seeks includes not only all of the terms of the most recent Consent Order – to all of which Mr. Genovese had agreed – but also an award of Double Eagle's reasonable attorneys' fees and expenses incurred since the time of Mr. Genovese's in Double Eagle's extended effort to persuade Mr. Genovese to fulfill his discovery obligations, culminating in this motion to compel effort.

**B.      Request Nos. 36 and 37**

These two requests concern BG Capital's and BG Signature's income tax returns.  The

---

[14] Written transcripts of the four discovery hearings were not available at the time of this filing.

returns are relevant to issues such a commingling, disregard for the corporate form, evading tort responsibility, the various solvency tests associated with UVTA and UFTA claims, and evidence of income tax and other forms of fraud.  As reflected in the summary table above and Mr. Genovese's actual responses (*see* Ex "B-2"), Mr. Genovese responded ***without objection*** that the returns for the requests 2015-present time period "will be provided for inspection and copying… ."  For this reason alone, Double Eagle's Motion as to these Requests should be granted and its fees and expenses awarded.

During the course of the discovery teleconferences, Mr Genovese for the first time raised his "concern" that BG Capital's tax returns allegedly contain the confidential information of other BG entities that are not parties to his action, and for that reason, Mr. Genovese would stand his newly-declared ground and refuse to produce the returns in their entirety.

Mr. Genovese's professed "concern" was false. That is so for the simple reason that, as reflected in the attached excerpt from 2015 BG Capital return (Ex. "D"), those other BG entities were all ***disregarded*** for purposes of the income tax return:

```
This tax return is for BG Capital Management South
Florida, LLC FEIN ████5141.  BG Capital Management
South Florida, LLC is the sole member/owner of multiple
entities which are disregarded.  The disregarded entities
do not file separate tax returns, but are rather included
in this tax return.  The disregarded entities included
in this tax return include:
```

[list of 30 BG and other Genovese-related entities].

Mr Genovese's newfound concern, about entities that were disregarded for purposes of BG Capital's tax returns, was thus a ruse and a delay tactic.

As a result, Double Eagle respectfully requests that the Court compel Mr. Genovese to produce all responsive BG Capital and/or BG Signature income tax returns, and thereafter certify

that there are no others in his possession, custody or control.  Double Eagle also respectfully requests an award of its fees and expenses incurred in pursuing Mr. Genovese's responses.

### C.      Request Nos. 45 - 48

Double Eagle's Request Nos. 45 through 47 generally seek financial and accounting records regarding Mr. Genovese, BG Capital, and BG Signature, as well as their financial statuses and net worth as October 1, 2015 (the date of the Agreement attached to the Complaints, Docs. 1 and 42), June 29, 2017 (the date of filing the original Complaint), June 6, 2018[15] (the date of the First Amended Complaint), and the day before the date of the responses to the Requests.  Request No. 48 seeks the financial statements and balance sheets of BG Capital and BG Signature for the years 2015, 2016, 2017, and 2018 to the present.

These Requests are directed to issues including commingling, respect for the corporate forms, evading tort liability, fraud associated with Double Eagle's alter ego and veil piercing claims, and to the assets, transfers, solvency, and badges of fraud relating to Double Eagle's UVTA and UFTA claims.  The chosen dates may reflect Mr. Genovese steering his alter egos into insolvency to evade tort responsibility, to evade creditors like Double Eagle, and for other fraudulent purposes.

During the course of the discovery teleconferences, Mr. Genovese invoked the alleged, out-of-court opinions of his unnamed, alleged "accountants."  Mr. Genovese argued that it was his accountants' position that they only calculated net worth and the like at year-end, and could not calculate such figures otherwise. Mr. Genovese's purported "Director of Accounting" for BG

---

[15] Please note that, as elsewhere in Mr. Genovese's responses, he mistyped the original Requests that he paired with his response.  In this instance, he mistyped the dates reflected in the actual Requests.

Capital, named Patricia Marlow, sometimes listened-in and spoke during the calls.  At no time during the teleconferences did Ms. Marlow reveal the brand of accounting software used by the Defendants.  Counsel for Mr. Genovese at one point indicated that he would inquire of his clients about what type of accounting software the Defendants used, but the answer was never revealed.

As an initial matter, Defendants copy-and-paste objections to these Requests were invalid.  They plainly lacked specificity, reasons, or any explanation as to what responsive materials Defendants had but that they were withholding and the grounds for doing so.  For this reason alone, Double Eagle's motion to compel should be granted.

What's more, Defendants plainly failed to abide by the electronically stored information obligations contained in Rule 34.  Rule 34(b)(2)(E) provides:

> **(E)** *Producing the Documents or Electronically Stored Information.* Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> **(i)** A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> **(ii)** If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> **(iii)** A party need not produce the same electronically stored information in more than one form.

And as the Advisory Committee Notes to Rule 34(b) further explain:

> If the form of production is not specified by party agreement or court order, the responding party **must produce** electronically stored information either in a form or forms in which it is ordinarily maintained or in a form or forms that are reasonably usable. Rule 34(a) requires that, if necessary, a responding party "translate" information it produces into a "reasonably usable" form. ***Under some circumstances, the responding party may need to provide some reasonable amount of technical support, information on application software, or other reasonable assistance to enable the requesting party to use the information.*** The rule does not require a party to produce electronically stored information in the form it which it is ordinarily maintained, as long as it is produced in a reasonably

> usable form. But the option to produce in a reasonably usable form does not mean
> that a responding party is free to convert electronically stored information from the
> form in which it is ordinarily maintained to a different form that makes it more
> difficult or burdensome for the requesting party to use the information efficiently
> in the litigation. If the responding party ordinarily maintains the information it is
> producing in a way that makes it searchable by electronic means, the information
> should not be produced in a form that removes or significantly degrades this feature.

(Emphasis added). Defendants took not the first step toward fulfilling their obligations under Rule 34, but instead put up roadblocks supported only by the inadmissible "opinions" of phantom accountants.

Were it not for the good faith of the Defendants' various banks in responding to Double Eagle's subpoenas, this Court and the Plaintiff might still be left wondering what accounting software the Defendants actually used. Yet Bank of America produced a BG Capital statement for the period ending October 31, 2018, which alone reflects BG Capital's *three* purchases of "INTUIT *QB [QuickBooks] ONLINE" between October 1, and 29, 2018. *See* **Exhibit "R."**

Finally, applications for Mr. Genovese's "secondary residences" loans through City National Bank of South Florida reveal that Mr. Genovese had no problem completing net worth information in connection with his Uniform Residential Loan Applications completed on June 30, 2014 (in the case of loan x8765, attached as Exhibit "F," at Section "VI. Assets and Liabilities"), and on loan **x0001** (completed on December 7, 2011, attached as **Exhibit "S,"** at Section "VI. Assets and Liabilities").

In short, Mr. Genovese has no good faith reasons whatsoever to withhold the electronic information and QuickBooks or any other accounting databases responsive to these Requests. As a result, Double Eagle respectfully requests the that Court compel to promptly produce those materials, and to pay Double Eagle's attorneys' fees and expenses incurred in pursuing Mr. Genovese full compliance with his discovery obligations.

**CONCLUSION**

For the reasons set forth herein, and for those discussed at length during the discovery teleconferences before the Court, Double Eagle respectfully requests that the Court grant this Motion and order Mr. Genovese to promptly produce all of the information, documents and other things addressed above, and to reimburse Double Eagle for its reasonable and now very substantial attorneys' fees and costs incurred in pursuing this discovery from him.

Respectfully submitted this 3rd day of March, 2019.

THE MAXIM LAW FIRM, P.C.

s/ Kevin A. Maxim
Kevin A. Maxim
Georgia Bar No. 478580
Michelle Cohen Egan
Georgia Bar No. 174650
The Maxim Law Firm, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia   30309
Phone: (404) 924-4272
Fax:    (404) 924-4273
E-mail: kmaxim@maximlawfirm.com
E-mail: megan@maximlawfirm.com

*Attorneys for Plaintiff*
*Double Eagle Club, Inc.*

## <u>CERTIFICATE OF GOOD FAITH CONFERENCE</u>

Pursuant to L.R. 26.5 and Fed. R. Civ. P. 37(a)(1), I hereby certify that Double Eagle has

in good faith conferred with Counsel for Defendants in an effort to obtain the requested

information and discovery without court action, and after reasonable efforts was unable to

resolve this dispute.

s/ Kevin A. Maxim
Kevin A. Maxim
Georgia Bar No. 478580

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that I have this day served a true and correct copy of the foregoing by

electronically filing the same with the Clerk of Court using the CM/ECF system which will send

notification to the following attorneys of record:

> Edward J. Tarver, Esq. (*etarver@enochtarver.com* and
> *enobles@enochtarver.com*)
> Enoch Tarver, P.C.
> 3540 Wheeler Road, Suite 312
> Augusta, GA   30909

and by depositing a copy in the first-class United States mail, postage paid and addressed to the

following:

> BG Capital Management South Florida, LLC
> and BG Signature Properties, LLC
> c/o Bobby Genovese
> 1250 South Pine Island Road, Suite 500
> Plantation, FL 33324

This 3rd day of March, 2019.

s/ Kevin A. Maxim
Kevin A. Maxim
Georgia Bar No. 478580

Michelle Cohen Egan
Georgia Bar No. 174650
The Maxim Law Firm, P.C.
1718 Peachtree St., NW
Suite 599
Atlanta, Georgia   30309
Phone: (404) 924-4272
Fax:    (404) 924-4273
E-mail: kmaxim@maximlawfirm.com
E-mail: megan@maximlawfirm.com